·ELLEN SITTERLY, Respondent, *v.* ANDREW GREGG,
APPELLANT.

*Payments—upon what debt to be applied.*

Although a debtor may, when making a payment, apply it as he pleases, even upon an outlawed debt, yet the creditor cannot compel its application to such debt by expressing his wishes to the debtor, unless the latter assent. thereto expressly, or by not objecting to the positive statement· of the creditor as to the application he intends to make thereof.

APPEAL from a judgment in favor of the plaintiff entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

. The action was brought by the plaintiff to recover of the defendant money loaned to him at different times.

*S. W. Jackson*, for the appellant.

*D. C. Beattie*, for the respondent.

LEARNED, P. J. :
There was no running account between the parties. The plaintiff lent the defendant $300, April 1, 1865, and took his note therefor, dated that day, payable at one day. She lent him $200, June 15, 1871 ; which he repaid about April 1, 1876. Whether he still owed interest on that loan we need not inquire. For she testifies that the $200 was paid her. She lent him, May 15, 1874, a sum the exact amount of which is in dispute, being either $830 or $820 or $740.

The defendant testifies that he paid the note some three years after it was given ; and he also sets up the statute of limitations. The defendant denies the payment of the note in her testimony. It is not distinctly proved when this action was commenced. But no point is made on that. It was evidently commenced after April, 1878, and probably about May, 1879.

On April 4, 1878, the defendant paid the plaintiff $850. This amount was not enough to pay the loan of May, 1874, and interest,  ·

whatever that loan may have been. Therefore there was no surplus which must necessarily apply on some other claim.

At the time of payment, the defendant took a receipt from the plaintiff, in these words, "$850. Received from Andrew Gregg, eight hundred and fifty, to apply on account of his indebtedness to me. Dated Schenectady, April 4, 1878. Ellen Sitterly." The plaintiff testifies that, at the time of payment, she said to the defendant that she wanted it applied on the first loan; and that she wanted it all made up then and straightened up then; and that he said he did not want it done then, on account of strangers knowing that their business was so far back; that he did not say to pay it on the old debt. The defendant testifies that he said, at the time, he did not want it so applied. No actual application by surrender of the note or indorsement thereon was made. In fact, the present complaint alleges the three loans as the cause of action.

We have then a payment insufficient to pay both claims, and even insufficient to pay all of the admitted claims; a statement by the creditor that he wanted the payment applied on the first debt, then outlawed; and a statement by the debtor that he did not want it done then. There is also testimony of the plaintiff of an interview, the next day, where she says the business was all figured up. But even then the parties disagreed.

Of course, it is the absolute right of a debtor, when making a payment, to apply it as he pleases. He may pay an outlawed debt. He may even pay a claim which he has, as he believes, previously discharged. But the creditor cannot compel the application to such debt as he desires, by expressing his wishes to the debtor. In the present case the plaintiff herself says that the defendant stated that he did not want it done then. So that he disagreed to the application which she wished. And she gave him a receipt for money to apply on account of his indebtedness. This receipt shows that there was no specific application at the time.

A positive statement by the creditor at the time of payment, of the mode of application of the money, not in any way objected to by the debtor, might be construed as the expression of the debtor's wish. But we do not see that here. The creditor expressed a wish, to which the debtor did not expressly consent, and from which

he dissented by the form of the receipt, and the refusal to have it all straightened up then. If there was no application at the time by the debtor, expressly or impliedly, the creditor could not afterwards apply the payment to an outlawed debt. (2 Parsons Cont., 356).

This view of the case becomes stronger when we consider all the evidence. That of the plaintiff has been already given. It is claimed that the testimony of her sister corroborates her. But, in fact, her testimony shows nothing of any agreement or intention of the defendant to apply the payment to the note. She says he promised to settle up at home, and to give a note for what he owed. O'Neill, who was present, says that the defendant, after the payment, said he owed the plaintiff more money. That would have been true, even excluding the note.

On the other hand, the defendant says that, at the time of payment, he refused to apply it on the "oldest debt;" that when she presented the note, he told her it was not good for anything. The defendant also testifies to the actual payment of the note, and, to some extent, this testimony is corroborated by that of James W. Gregg. The plaintiff denies such payment.

There are other conflicts as to the amount of money loaned, which we need not examine in detail.

Now, it is plain that this note is outlawed, unless it was paid by defendant in April, 1878. It rests with the plaintiff to prove this fact. Both she and the defendant are interested witnesses. Her testimony is not corroborated. His is corroborated by the receipt then given, and by the fact that she did not surrender the note, which she claims was then paid. It was retained by her until the day of trial and then produced.

This case shows the value of the statute of limitations. The plaintiff claims on a debt thirteen years old, which the defendant claims was paid ten years ago. Which is, in fact, right, it is difficult to tell. But such stale claims should not be revived on the doubtful testimony of parties. The lapse of time should protect the alleged debtor.

The judgment and order should be reversed, and a new trial granted, costs to abide the event.

Present—LEARNED, P. J., BOCKES and FOLLETT, JJ.

Judgment and order reversed, new trial granted, costs to abide event.